## Kinney *versus* Glasgow *et al.*

1. Under the 9th section of Act of April 8th 1833, a devisee whose estate is a mere gratuity is not a purchaser.

2. At common law a devisee taking by will what he would by descent, is not a purchaser, and clogging his estate with conditions or encumbrances does not change him to a purchaser.

3. Under the Act of 1833, the quantity of the devise makes no difference in the descendible quality, the legislative intent being that the entirety and not parts only, shall be subject to the rule of blood.

4. If the testator plainly indicates his intention to treat his devisee as a vendee and to increase the burden because he has increased the quantity devised, the case would be different.

5. Independently of an express intent, the charge of a legacy on a devise greater than the devisee would take by descent, will not convert a devise into a purchase.

ERROR to the Court of Common Pleas of *Blair county*.

This was an action of ejectment brought to April Term, 1865, by Jackson Kinney against Joseph Glasgow and others, to recover a tract of 65 acres of land in Blair county, in which a case was stated for the opinion of the court, showing the following facts :—

Richard Glasgow, the owner of the land in controversy, had two wives, by both of whom he had children, the defendants in this suit. After the death of his second wife, he married Isabella Kinney, by whom he had a son, Richard Taylor Glasgow. Richard Glasgow by his will, proved May 2d 1859, besides gifts to other legatees, gave to his wife for life the use of his house where he resided, with fire-wood, &c., and $25 annually. He gave to his daughter Sarah $100, to be paid by his son Richard Taylor Glasgow, to whom he further devised "the remainder of the tract of land that I now reside upon (subject to the aforementioned devises to my said wife and the privilege granted to my said son Joseph and those claiming under him, of the joint use of said spring, &c.), containing 65 acres 57 perches, to him and to his heirs and assigns (he having to pay the several sums mentioned

and provided for his mother as herein set forth), to be in full of his share of my estate, real and personal."

Richard, the son, accepted the devise, paid the sums as directed in the will, and the encumbrances charged on the land, and died seised of the land, intestate, unmarried and without issue, leaving his mother, and his brothers and sisters, children of the first and second wives of his father, surviving him. Shortly afterwards his mother died intestate, leaving an illegitimate son, Jackson Kinney, the plaintiff in this suit, and sisters. The court below, May 4th 1866, directed judgment for the defendants, which was the error assigned.

—————— ————, for plaintiff in error, stated the question to be, Does the acceptance by Richard Taylor Glasgow of the land devised to him by his father, Richard Glasgow, taking possession of it and paying the charges and encumbrances upon it, make him a purchaser for value? and cited Lewis *v.* Gorman, 5 Barr 164; Maffit *v.* Clark, 6 W. & S. 261; Hartman's Case, 4 Rawle 39; Hoover *v.* Hoover, 5 Barr 351; Glen *v.* Fisher, 5 Johns. Ch. 35; Lobach's Case, 6 Watts 171; Tea's Appeal, 11 Harris 228; King *v.* Ackerman, 2 Black 412, O'Connor, *arguendo*, and Grier, J., delivering opinion of the court; Culbertson *v.* Duley, 7 W. & S. 196; Walker *v.* Dunshee, 2 Wright 430; Roberts's Appeal, 3 Id. 421; Act of April 8th 1833, § 5, Purd. 563, pl. 22, Pamph. L. 316; Opdyke's Appeal, 13 Wright 373.

*R. A. McMurtrie*, for defendants in error.—The plaintiff is not of the blood of him by whom the estate was acquired and devised: Act of April 8th 1833, § 5, supra, § 9, Purd. 564, pl. 27, provides that to inherit, a person must be of the blood of the person from whom the estate descended or by whom it was devised: citing, also, Roberts's Appeal, 3 Wright 417; Moyer *v.* Thomas, 2 Id. 426; Bevan *v.* Taylor, 7 S. & R. 397; Maffit *v.* Clark, 6 W. & S. 258; Lewis *v.* Gorman, 5 Barr 166; 2 Jarman on Wills 171.

The opinion of the court was delivered, October 17th 1866, by

AGNEW, J.—The plaintiff is the illegitimate son of Mrs. Isabella Glasgow, widow of Richard Glasgow. Richard Glasgow devised to his son R. Taylor Glasgow a tract of land charged with the supply of necessary provisions and fire-wood, and the payment of an annuity of $25 to his mother during her natural lifetime, in lieu of her estate and dower in the land. R. Taylor Glasgow was also ordered to pay his half-sister Sarah $100, bequeathed to her, but not specifically charged on the land.

R. Taylor Glasgow performed the terms of the will, and died seised, intestate, unmarried and without issue, his mother sur-

[Kinney v. Glasgow.]

viving him; and the question is, whether the estate descended to Isabella the mother in fee or for life, and consequently whether at her death it descended to her illegitimate son under the Act of 1855, or to the half brothers and sisters of R. T. Glasgow.

It is conceded that Mrs. Glasgow, not being of the blood of the testator, is excluded from the inheritance by the 9th section of the Act of 8th April 1833, unless her son, R. T. Glasgow, took the devise as a purchaser. As the 9th section extends to gifts and devises as well as to simple descents, it has been held that a devisee whose estate is a mere ' gratuity is not a purchaser: Hartman's Estate, 4 Rawle 39; Lewis v. Gorman, 5 Barr 164; Hallowell's Estate—Tea's Appeal, 11 Harris 223; Clepper v. Livergood, 5 Watts 113.

But it is thought that the charge on the estate devised converted R. Taylor Glasgow into a purchaser for value, which would carry the estate to his heirs generally, and not exclusively to those *ex parte paterna*. At the common law a devisee who takes by the will precisely the estate that would have been cast upon him by descent, is in by descent and not by purchase, and his estate being clogged by conditions or encumbrances, does not change its descendible quality. The charge does not in such cases convert him into a purchaser: Coke on Lit. 12 b, note 2; Thomas Coke 171, vol. 2. This doctrine is recognised by Chief Justice Gibson, in Hartman's Estate, 4 Rawle 44, who cites also Hurst v. Winchelsea, 2 Burrows 879; Clerk v. Smith, 1 Salkeld 241; Hedger v. Rowe, 3 Levinz 127; Allen v. Heber, 1 Black R. 22. See also Selfridge's Appeal, 9 W. & S. 55, and Waln's Appeal, 4 Barr 506. In the last case Gibson, C. J., says the law casts the inheritance on the devisee, compelling him to take by his preferable title when the devise is exactly as it is given by law.

This would be decisive of the character of the devisee's title but for the difference in quantity, the devisee in this case taking under the devise the shares which would have gone to other heirs in a case of intestacy. This, according to the doctrine of Reading v. Royston, 1 Salk. 242, would convert his estate into a purchase. There the devise of the whole to the son of one of two sisters who would have been co-parceners carried the estate to him by purchase, notwithstanding one moiety would have come to him by descent through his deceased mother.

This leads us at once to the enactment in the proviso to the 9th section of the Act of 1833, and there we find that the quantity makes no difference in the descendible quality of the estate. It provides that no person who is not of the blood of the ancestors or other relations from whom any *real estate* descended or by whom it was *given or devised* to the intestate shall in any of the cases before mentioned take *any estate* of inheritance therein;

[Kinney *v.* Glasgow.]

but *such real estate,* subject to such life estate as may be in existence by virtue of this act, shall pass and vest in such other persons as would be entitled by this act, if the persons not of the blood of such ancestor or other relation had never existed or were dead at the decease of the intestate. The legislative intent here is plain that the entirety, and not parts only, shall be the subject of the rule of blood. We cannot give to the proviso the interpretation that the aliquot part of the devise which he would have taken by descent in case of intestacy is subject to the rule, and that the other portions must pass as if acquired by purchase. True, in this case the devisee would ordinarily and for other purposes be in by purchase according to the rule in Reading *v.* Royston, just cited; but here the legislature has made it a canon of descent that the whole subject of the devise shall not pass out of the blood of the ancestor from whom it came.

Hence, if the devisee be of his blood, the entirety, and not portions only, must continue in the blood line. This is the literal import of the language; while to give it another would introduce diversity of interest and confusion in the descent. It is the effect of putting *a gift or devise* of *any* real estate on the same footing as to descent as that which is acquired by mere descent. Now if, as we have seen from the authorities cited, the imposing of conditions or encumbrances does not change the character of the estate when the common law treats the devisee as in by descent instead of under the will, by greater reason the imposition of conditions or encumbrances will not do so when he obtains more in quantity under the will than he would have by descent, unless the manifest intent of the testator is to treat the devise not as a gratuity but as a sale. If, indeed, the testator plainly indicates his intention to treat his devisee as a vendee and to increase the burden because he has increased the quantity devised, a different case might arise, but then the estate taken by the devisee manifestly would not be a gratuity.

In this case the widow's interest in the estate was a pre-existing charge in law to which the land was liable whether it descended or passed by devise, and the charge on it was in lieu of this interest.

It has never been understood that this interest varies the rule of descent created by the proviso in the 9th section, but on the contrary, by force of its own terms, the estate descends subject to the life estates in existence. Nor does the charge of $100, to be paid to the half-sister, evidence any intention to treat the devisee as a vendee. There is nothing in the legacy or in the devise itself which indicates the legacy to be a price fixed as a consideration of the devise. If the legacy were construed to be the price of a part, the interest it would represent in the land could not be apportioned. It has no measure, for the

[Kinney *v.* Glasgow.]

land has no value determined by the will, but must be valued by an outside test to be applied long after the will has been made; while the true apportionment in the mind of the testator, if indeed he thought of what he has not expressed, was that existing at the time of making his will.    There being no testamentary rule by which the land can be apportioned between the gratuity and the encumbrance, there is no reason to conclude that the testator meant to devise any portion of the land in consideration of the payment of the charge upon it.    And, independently of an express intent, there is nothing in the charge itself which should convert the devise into a mere purchase.    The subject of it still retains its prime character as a gratuity.    Its tint, it is true, is changed by the mixture, but its color remains the same.    The payment but diminishes the value of the gratuity, but not its character.    Nor does this construction do injustice to the devisee.    The power over his own estate, which, by his voluntary acceptance and payment, has been mixed with that devised, is not lost.    He can alien the whole as freely as could his testator by deed or by devise; and if he die without it will continue in his own blood, which is that also of the testator, the statutory rule being intended only to provide for its transmission when he dies without alienation and without issue.

The reasoning of Judge Lowrie in Hallowell's Estate, 11 Harris 228, is directly against the notion of a mere charge creating a purchase.    No doubt, as he remarks, there are cases when devisees do stand as purchasers.    Such is the case of a devise to one who is not of the testator's blood: Culbertson *v.* Duley, 7 W. & S. 195; Walker *v.* Dunshee, 2 Wright 430.    And so perhaps might be a devise of a tract to be valued and the price divided among children, with a direction to enable one to elect to take it and to pay the others their shares.    But in ordinary cases, as observed by Judge Lowrie, they are treated as purchasers only for the purpose of raising a technical promise in support of the forms of a common-law action.

We are of opinion there is nothing in this will indicating an intention to treat the devisee as a vendee or purchaser for a price, but that he takes the land as a gratuity encumbered in the ordinary way.    The proviso to the 9th section of the Act of 8th April 1833 applies therefore to the entire devise, and not to that portion only which he would have taken by descent in case of intestacy.

The judgment is affirmed.