## J. S. CLACK v. M. A. HART ET AL.

### Decided April 6, 1901.

**1.—Public Land—Conflict of Applications to Purchase.**

On March 1 appellee applied to purchase a section of State asylum lands which had been forfeited by the Land Commissioner on February 25th. M. was occupying three-quarters of the section at the time of forfeiture, claiming under the original purchaser, and had a statutory preference of ninety days to repurchase, within which time he duly applied to purchase those three-quarters, and his application was at once accepted. At the same time, on May 8th, appellant moved on to the unoccupied quarter, and two days later filed affidavit of settlement and application to purchase it, which was rejected on May 25th. On May 18th appellee also moved on to the unoccupied quarter, and on May 20th filed an amended application to purchse it, stating therein that he did not waive his rights to such quarter acquired by virtue of his former application for the entire section, and this amended application was accepted May 25th. Held, that the acceptance of M.'s application amounted in law to a rejection of appellee's application to purchase the entire section under which the Commissioner had no power to award appellee only one quarter; that appellee's right to purchase the

unoccupied quarter dated from the filing of the amended application, and as it was later in date than appellant's application, the latter should have been accepted by the Commissioner, and appellant was entitled to recover the land in trespass to try title.

2.—Same—Abandonment.

The fact that appellant afterwards, in obedience to a judgment of ouster in forcible entry and detainer, moved off the land without waiting to be put off by an officer was no evidence that he abandoned his application and claim to the land.

Appeal from Taylor. Tried below before Hon. N. R. Lindsey.

*Bowyer & Tillett,* for appellant.

*J. M. Wagstaff,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—This was an action of trespass to try title brought by appellant against Marsh Hart on the 18th day of June, 1897, to recover the southeast quarter of section 52, blind asylum lands, in Taylor County, Texas. The plea was not guilty. Pending the suit R. A. Hart purchased the land from his brother Marsh, and intervened, and verdict and judgment went in his favor, and hence this appeal.

The record discloses that said section 52 was originally classified and appraised in quarter sections and sold under the Act of April 25, 1874, as follows: the northeast quarter to S. A. Wood; the northwest quarter to D. H. Harris; the southwest quarter to S. P. Hines, and the southeast quarter to S. E. Hines, and these quarter sections were separately fenced. About January 1, 1897, the Commissioner of the General Land Office forfeited all these sales for nonpayment of interest, and on February 25, 1897, reclassified the same as watered agricultural land, and put it on the market at $2 per acre. On March 1, 1897, Marsh Hart filed his application with the Commissioner of the General Land Office to purchase the entire section, as an actual settler, the evidence tending to show that on that day he was an actual settler on the southwest quarter. When the sales were forfeited one H. S. Menifee was occupying all the section except the southeast quarter, holding the same, it seems, under the original purchasers, and on the 8th day of May, 1897, and within ninety days from the day it was put upon the market, applied to purchase the same, except the southeast quarter, and the Commissioner awarded it to him, and he paid the purchase price in full and received a patent from the State for the three quarter sections on May 21, 1897. On May 8, 1897, J. S. Clack moved onto and actually settled upon the southeast quarter of said section, and on the 10th day of May filed his affidavit of actual settlement, and application to purchase the southeast quarter of the section in the General Land Office, together with his obligation, and sent to the State Treasurer one-fortieth of the purchase price. But this application was rejected by the Commissioner on May 25, 1897. On May 18, 1897, Marsh Hart moved his tent upon

the southeast quarter, and made, what is termed in the record, an amended application, amending his former application of March 1, 1897, wherein he applied to purchase the southeast quarter of the section, expressly stating therein that he did not waive any rights to this quarter section acquired under his former application, and this so-called amended application was filed in the General Land Office on May 20, 1897, and was accepted by the Commissioner, and the southeast quarter aforesaid awarded and sold to him on May 25, 1897. Thereupon he instituted forcible entry and detainer proceedings against the appellant, Clack, and ousted him from the possession of the land, and a few days after the ouster the appellant brought this suit.

· The statute gave Menifee the prior right to purchase the land for ninety days after the Commissioner again put the land upon the market, and having made his application to purchase the three quarters of the section, Menifee rightly received the award to that portion of the section which was patented to him, and this award to Menifee amounted in law to a rejection of Hart's application to purchase the whole section. The Commissioner had no power to award the entire section to Hart, as against Menifee, until after the expiration of the ninety days from February 27, 1897, the day the land was again placed upon the market, and under his application for the whole section the Commissioner had no power to award or sell to Hart one quarter thereof. A man might be willing to settle and reside upon a whole section for three years in order to secure the privilege of buying it for a home, when he would decline to do so upon a quarter section; and as the law puts the land up for sale at public auction, as it were, to actual settlers and to the first bidder in 80-acre tracts or multiples thereof, the bid must be accepted, or rejected, as made, and every amendment of the bid whereby more land or less is applied for is, in law, a new bid, and the law awards the land to the first bidder who complies with its terms. So that, we conclude that Hart's application to purchase the southeast quarter must date in law from the day his so-called amended application was filed in the General Land Office, May 20, 1897, and that being subsequent in time to the application of appellant, we are of opinion that it was inferior in right, and that the Commissioner should have accepted the appellant's application and awarded him the land. There is no evidence that appellant abandoned his application and claim, but on the contrary it affirmatively apppears that within a few days after the judgment of ouster was rendered against him he filed this suit. The fact that he obeyed the judgment of ouster and moved off the land without waiting to be put off by an officer would not be sufficient evidence to establish abandonment under such circumstances, or even to make that a controverted issue.

Under the evidence in this case we are of opinion that the court should have instructed a verdict for the appellant, as it affirmatively appears by the uncontradicted evidence of Hart that he was not entitled

under either of his applications to hold the land as against the appellant.

The judgment is therefore reversed and there now rendered in favor of the appellant.

*Reversed and rendered.*

### ON MOTION FOR REHEARING.

It must be inferred from the issuance of patent to Menifee that he was within the provisions of article 4218j and 4218k of our Revised Statutes (Act of 1895), there being no evidence in the record to the contrary, and that he and those under whom he claimed had, theretofore, occupied the land as actual settlers in good faith for the purpose of making it their homes, for three years consecutively, and that the Commissioner had rightfully patented the land to him upon his making the proof of occupancy as required by law, and payment of the purchase money. This being true, and Edin's application being for the entire section, when the Commissioner rejected his application and accepted that of Menifee for the three quarter sections, he had no application pending to purchase the southeast quarter, and no claim whatever upon it for the same reason that Marsh Hart had none after his application for the whole section was impliedly rejected by the issuance of the patent to Menifee, especially as he is asserting no claim to any part of the section, but has in effect acquiesced in the rejection of his application by the Commissioner. This, then, left the southeast quarter section still on the market, and Clack's application being ten days prior in time to that of Marsh Hart, and as there can be no serious question made on his actual settlement, the evidence thereof being undisputed, we adhere to our original opinion and overrule this motion.

*Overruled.*

---

### MᶜLᴇɴɴᴀɴ Cᴏᴜɴᴛʏ ᴠ. Jᴏʜɴ N. Gʀᴀᴠᴇs ᴇᴛ ᴀʟ. ᴀɴᴅ J. L. Nᴏʙʟᴇ, Sʜᴇʀɪғғ.

Decided March 2, 1901.

**1.—Sheriff's Sale of Real Estate—Costs and Commission.**

Where a vendor's lien was foreclosed on land and the judgment directed that it should be sold in parcels as under execution, the sheriff was entitled to tax his commissions upon a basis of as many sales as there were separate purchasers, instead of taxing them as if there had been but one sale in bulk for the total amount realized. See note at end of the opinion for ruling of the Supreme Court on this point.

**2.—Same—County School Land.**

Where a county foreclosed its vendor's lien on land that had been granted it for county school purposes, and the lands were sold under execution, the sheriff was entitled to retain the costs of suit and his commissions for making sale out